Pierce Singh v. United States Citizenship. Thank you. Thank you. Good morning. Good morning, your honors. My name is Michael Piston. I represent Amrit Paul Singh, the plaintiff appellant in this matter. The general issue in this case is whether an action under the Administrative Procedure Act to review the U.S. CIS's denial of an application for adjustment of status constitutes the judicial review of an order of removal, which is barred under 8 U.S.C. 1252A5, whereas here the plaintiff is under a final order of removal. However, we believe that what is decisive in this case is a much narrower question, and that is what this Court meant in Delgado v. Quarantillo, the only Second Circuit case which has interpreted this provision, when it held that an action for mandamus on an application for adjustment of status filed by a plaintiff who was subjected to a reinstated removal order was barred by 1252A5 because the application was, quote, inextricably linked to the plaintiff's removal order. What's your client's goal in all of this? He would like to become a U.S. permanent resident. If he did, what would happen to the removal order? The removal order would still be there. He is allowed under the matter of URI. He doesn't care whether the removal order is there. He wouldn't be removed, correct? He would not be removed. All right. But that would have an impact on the removal order. The difference is that what the Ninth Circuit was meant when they first used this term, inextricably linked, because the Delgado court here is quoting from the Ninth Circuit in a case called Morales. What Morales meant when they said that a removal order is inextricably linked to an application for adjustment of status is that they meant that the removal order could have to be invalidated before the application for adjustment of status could be granted. That's because it was a reinstated removal order that they were talking about in Morales and in Delgado. In a reinstated removal order, you cannot be granted adjustment of status unless that reinstated removal order is first vacated because the reinstated removal order prohibits a grant of adjustment of status. That's under 1231A5. The difference here is that in your case, it's indirect. Pardon me, Your Honor? It's indirect in the sense that the removal order could not be executed. The whole purpose of an order is to be executed. If it never gets executed, then it stops having any force or effect. I think the difference between a removal order which is inextricably linked to an application for adjustment of status and one that is not is that for it to be inextricably linked, the removal order has to be terminated first before the application for adjustment of status can be granted. That's the difference. And that's clearly what the Morales Court referred to when they used that phrase. And that's how the Ninth Circuit interpreted that phrase in a subsequent case called Crippa v. Holder. And that's how the Seventh Circuit interpreted that phrase in a case called Tristan Torey's Tristan v. Holder. The difference between an inextricably linked removal order and an ordinary removal order is that you have to terminate the — is that if the order is inextricably linked, it has to be terminated first before you can proceed with the adjustment of status. I'm not sure that's how it worked in Delgado, but I'm quite skeptical about whether that was the essential — whether that was the linchpin of Delgado rather than simply looking to see whether the order of granting lawful permanent residency would vitiate the force of the removal order. Well, it becomes a question of why did the Delgado court use that particular phrase? Why did they use that particular phrase, inextricably linked? And why did they quote Morales if they didn't mean the same thing as Morales meant? Isn't it an inextricable linkage if the grant of lawful permanent residency status would inevitably cause the removal order to become ineffective? It could be, Your Honor, but that's not what the Ninth Circuit meant in Morales, and that's not what it meant in Crippa v. Holder, and that's not what the Seventh Circuit meant in Tristam and Torres Tristam v. Holder. In each one of those cases, when they talked about an inextricably linked order, they made it clear that it was an order that precluded an applicant from the grant of adjustment of status. And that's not the case here as a district. Don't you have an appeal pending in the Ninth Circuit of the order of removal? Yes. All right. Well, technically it's an appeal of the court's denial of a motion to reopen the removal order. All right. And you took that directly to the Ninth Circuit in the same way, which we're all familiar with how orders of this kind go to the Court of Appeals as a matter of exclusive jurisdiction. Well, Your Honor, what the government would say is that we should have sought review of the denial of the application through adjustment of status through a petition to review to the Ninth Circuit Court of Appeals, but the Ninth Circuit held in Kripa v. Holder that you can't seek review of a removal order through a petition for review because it is not inextricably linked to the removal order. In other words, in Kripa v. Holder, we have exactly what the government would have us do. The government would have said we should have filed a petition for review in the Ninth Circuit to seek a review of the denial of this removal order, and in Kripa v. Holder, this person did that. Procedurally, am I correct that this is an appeal from the denial of a motion for mandamus in the district court to require USCIS to rule on your client's motion for adjustment of status? Not exactly. It's actually an appeal from an action for judicial review under the Administrative Procedure Act in which we ask the district court to declare the decision of the USCIS denying my client's application for adjustment of status because they supposedly had lack of jurisdiction as not in accordance with law. Can I ask? I see your time has expired. This is still pending in the Ninth Circuit. Isn't it the appeal of the BIA's denial of his petition to reopen? Of a motion to reopen, yes. It's been pending since 2013. Any update on that case? Actually, I'm not handling that, Your Honor. Is there a stay order in place in the Ninth Circuit? I believe there is. But that's a separate case than this case, although were you to prevail in either or both, wouldn't one be redundant? Your Honor, in my professional opinion, the chances of the Ninth Circuit case prevailing are de minimis. I see. So this is plan B. This is the client came to me and said he doesn't like the way his case is going. Is there anything else we can do? Thank you. You've reserved rebuttal, and we'll give you an answer. Good morning, Your Honors. May it please the Court. Assistant United States Attorney Brandon Waterman on behalf of the U.S. Attorney's Office, Southern District of New York, for the government. This court should affirm the district court's dismissal of Singh's complaint for lack of jurisdiction. As the court just heard, this is essentially a plan B approach that Mr. Singh is taking to have his status decided by a court, whether the Ninth Circuit or the Southern District of New York or now the Second Circuit. And as the district court correctly concluded here, that's an impermissible attempt to circumvent the jurisdictional stripping provisions of the Real ID Act. On the other hand, it's an interesting one. As Judge Furman recognized, it's a creative attempt to circumvent the law, but it still fails for all the reasons that we state in the brief and as stated by the district court. Your Honor, you're relying on 1252A5, which says, notwithstanding any other provision of law, a petition for review filed with an appropriate court of appeals shall be the sole and exclusive means for judicial review of an order of removal. And your adversary is saying he's not seeking review of the order of removal. That's correct, Your Honor. But under Delgado, Delgado extended the Real ID Act to indirect challenges to a removal order. And that's exactly what we have here. As Judge Furman, the district court had recognized, an action to essentially compel USCIS to adjudicate on the merits in application for adjustment of status is a necessary prerequisite to setting aside the deportation order, the removal order here, which if USCIS grants the application- The removal order is not here. It's in California. Am I right? That's correct. And that's exactly the point here, Your Honor, is the Real ID Act consolidated all judicial review of an order of removal into one court of appeals, the appropriate court of appeals. And the appropriate court here is the Ninth Circuit. The Ninth Circuit currently has pending before a PFR challenging a motion to reopen that raised issues relating to Mr. Singh's status and also which agency is the appropriate agency to adjudicate the adjustment of status application. Mr. Singh argued that first in his 2007 PFR to the Ninth Circuit, and he again raised that issue in his 2013 PFR to the Ninth Circuit. His attempt here to raise that same issue in the Southern District of New York is improper and is barred under Delgado and the Real ID Act. What do you say to your officer's argument in the briefs that his client should be treated as an arriving alien because he just, as it were, arrived. Now, I know he's been here 20 years, but he was gone and then he came back. Well, that's correct, Your Honor, and this issue has been addressed by the Ninth Circuit. While his petition for review is pending with the Ninth Circuit, he was on a plane the moment the Ninth Circuit had granted a stay. So he was essentially removed in violation of the Ninth Circuit's stay. The government then worked to bring him back. Did the government have notice of that stay at the time the plane took off? It's unclear. I believe the record shows that DHS was aware and they tried to remove him from the plane. They agreed the removal was an error. Correct. Absolutely, yes. And the government worked to bring him back to restore the status quo ante. They looked to find out whether when he came back he was arriving. I mean, he did. I mean, he arrived. But whether he's arriving would seem to be a separate question. Right. Well, he was certainly brought back in, Your Honor. He was paroled back into the United States, and parole is the procedural mechanism by which an individual can come back into the United States. An individual, once they leave, cannot just enter without some sort of paperwork or document. So the parole was a mechanism, a necessary mechanism, to bring him back into the United States so that he could pursue his PFR before the Ninth Circuit through to its conclusion. And as the Ninth Circuit had held there in the 2012 decision on the 2007 PFR, that his erroneous or unlawful removal or deportation did not count as a departure under the immigration laws. And essentially under the Ninth Circuit's law. And if he didn't depart, he can't arrive? I think that's correct, Your Honor. Right. He didn't have a departure, didn't execute his deportation order. He remained in deportation proceedings, and the Ninth Circuit retained jurisdiction over the PFR. And that's still he was subject to a final deportation order then, and he is still subject to a final deportation order now. The Ninth Circuit has reached that conclusion? In the 2012 decision on the PFR, yes. It stated that the government's erroneous removal did not count as a departure under the immigration laws. They ruled that he was continuously in removal and that the departure and reentry did not change his status. Well, Your Honor, they didn't explain in that much detail that, no, his parole into the United States or his leaving the United States, they really didn't discuss whether he's an arriving alien or not. They didn't put it in those terms. But they certainly said that his erroneous removal or deportation did not count as a departure under the immigration laws. And it cited several of its cases which hold that, or stand for the proposition that, if an alien is unlawfully removed, he is brought back in the United States to the status he had before he was removed. It restores the status quo ante, so he's not prejudiced in any way. Is the underlying proceeding in the district court in the nature of a mandamus? It's essentially asking, the simple answer is no. It's an APA case, but it is essentially asking for an order directing USCIS to rule on the adjustment application. So in that respect, it is similar to Delgado, where there's a mandamus petition to compel USCIS to rule on an I-212 waiver. And with that, Your Honor, if there are no further questions, I can simply rely on the briefs. Thank you. Thank you. Thank you. Your Honor, I think it's very important to- Let me just make sure that we are still connected to Judge Winter. Are you still there? Yes, I'm here. All right. And I'd like to ask, is the appellant in Pasternak? Yes, the appellant is now at the podium. The appellant is at the podium. Could I ask a question? Go ahead. Is he going to ask a question? I'm sorry, I thought we were- When you asked me if I was still connected, I thought the thing was done. No, no, no. No, no. Mr. Piston, who is the appellant, is at the podium and ready to answer your questions. For what case? I don't have the names of the attorneys here. Oh, I'm sorry. This is Mr. Piston in Singh v. United States Citizenship and Immigration Services. Okay. I'll wait for the appellant in Pasternak. Oh, okay. Sorry. Go right ahead. Your Honor, first of all, number one, as the government says, he was paroled into the United States. Under a matter of lawsuit, anybody who enters under parole is an arriving alien. Second of all- Ninth Circuit found otherwise in this very case. No, they did not, Your Honor. No, they did not. What the Ninth Circuit held is that he departed. So, counsel would like to say that because he didn't depart, therefore he didn't arrive. But as a matter of fact, the Board of Immigration Appeals has addressed this issue also. In a case called Arabelli v. Arabelli, matter of Arabelli, they said that if a person departs, if a person leaves the United States on advance parole, they're not departing. Nevertheless, they'll be treated as an arriving alien when they're paroled back into the United States. Exactly the same case, Your Honor. So there's no doubt at all under the law, and if you read my briefs, you'll see this is very carefully brought out. There's no doubt at all that he is deriving alien. Furthermore, the Ninth Circuit never held in his case that we reinstate him to his previous situation. They just said we find that there was no departure, therefore he's still in removal proceedings. It's just very difficult for us to deal with a case in which half of it is going on on the other side of the country. Well, Your Honor- It certainly sounds as though this is a matter located in the Ninth Circuit, if anywhere, which is pretty much, I think, what Judge Furman concluded. Yes, Your Honor, but the problem is that the Ninth Circuit held that if we filed a petition for review, seeking review of the USCIS's denial of our adjustment of status, they would deny it because it violates the rule of- because that removal order is not strictly linked to that removal order. That's what they said in Krepa v. Holder. Now you're seeking more or less the same relief or relief with the same goal here, and this is looking like a multiplication of proceedings. Well, Your Honor, the theory under which they're proceeding in the Ninth Circuit is not the same theory that we're proceeding here. There's other counsel in the Ninth Circuit, am I correct? Yes, Your Honor. In the Ninth Circuit, what he tried to do is he's trying to reopen the removal order so he can apply for adjustment of status before the immigration judge, and it's our position that he cannot do that because the immigration judge does not have jurisdiction over an application for adjustment of status filed by an arriving alien, and the regulation is quite clear. Thank you. Thank you, Your Honor. Thank you, counselors. Both of you.